AO 106 (Rev. 04/10)  Application for a Search Warrant

CLERK'S OFFICE U.S. DISTRICT COURT
AT ABINGDON, VA
FILED

NOV 1 4 2023

LAURA A. AUSTIN, CLERK
BY: _____
DEPUTY CLERK

# UNITED STATES DISTRICT COURT

for the

Western District of Virginia

In the Matter of the Search of

*(Briefly describe the property to be searched
or identify the person by name and address)*

Information associated with the Instagram account
username "Quill4_k" that is stored at premises controlled
by Meta Platforms Inc.

) 
) 
) 
) 
) 
)

Case No. 1:23mJ142

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A

located in the _____Northern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC § 846 | Conspiracy to distribute fentanyl |

The application is based on these facts:

See attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Ryan Temm, Senior Special Agent
_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11/14/23

City and state:  Abingdon, VA

_____
*Judge's signature*

Pamela Meade Sargent, USMJ
_____
*Printed name and title*

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

This warrant applies to information associated with Instagram account "Quill_4k" that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered at 1601 Willow Road, Menlo Park, California 94025.

## ATTACHMENT B

### PROPERTY TO BE SEIZED

**I.      Information to be disclosed by Meta Platforms, Inc. ("Meta Platforms")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta Platforms Inc., regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Meta Platforms Inc., Meta Platforms Inc. is required to disclose the following information to the government for the account or identifier listed in Attachment A (the "Account"):

A.      All business records and subscriber information, in any form kept, pertaining to the Account, including:

1.      Identity and contact information (past and current), including full name, e-mail addresses, physical address, date of birth, phone numbers, gender, hometown, occupation, websites, and other personal identifiers;

2.      All Instagram usernames (past and current) and the date and time each username was active, all associated Instagram and Meta Platforms accounts (including those linked by machine cookie), and all records or other information about connections with Meta Platforms, third-party websites, and mobile apps (whether active, expired, or removed);

3.      Length of service (including start date), types of services utilized, purchases, and means and sources of payment (including any credit card or bank account number) and billing records;

4. Devices used to login to or access the account, including all device identifiers, attributes, user agent strings, and information about networks and connections, cookies, operating systems, and apps and web browsers;

5. All advertising information, including advertising IDs, ad activity, and ad topic preferences;

6. Internet Protocol ("IP") addresses used to create, login, and use the account, including associated dates, times, and port numbers, from January 1, 2020, through August 23, 2023; and

7. Privacy and account settings, including change history.

B. All content (whether created, uploaded, or shared by or with the Account), records, and other information relating to videos (including live videos and videos on IGTV), images, stories and archived stories, past and current bios and profiles, posts and archived posts, captions, tags, nametags, comments, mentions, likes, follows, followed hashtags, shares, invitations, and all associated logs and metadata, from January 1, 2020, through August 23, 2023;

C. All content, records, and other information relating to communications sent from or received by the Account from January 1, 2020, through August 23, 2023, including but not limited to:

1. The content of all communications sent from or received by the Account, including direct and group messages, and all associated multimedia and metadata, including deleted and draft content if available;

2. All records and other information about direct, group, and disappearing messages sent from or received by the Account, including dates and times,

           methods, sources and destinations (including usernames and account numbers), and status (such as delivered, opened, replayed, screenshot);

3.      All records and other information about group conversations and video chats, including dates and times, durations, invitations, and participants (including usernames, account numbers, and date and time of entry and exit); and

4.      All associated logs and metadata;

D.     All content, records, and other information relating to all other interactions between the Account and other Instagram users from January 1, 2020, through August 23, 2023, including but not limited to:

1.      Interactions by other Instagram users with the Account or its content, including posts, comments, likes, tags, follows (including unfollows, approved and denied follow requests, and blocks and unblocks), shares, invitations, and mentions;

2.      All users the Account has followed (including the close friends list), unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow, and of users who have followed, unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow the Account;

3.      All contacts and related sync information; and

4.      All associated logs and metadata;

E.     All records of searches performed by the Account from January 1, 2020, through August 23, 2023; and

F.    All location information associated with the Account, including location history, login activity, information geotags, and related metadata from January 1, 2020, through August 23, 2023.

Meta Platforms is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

## II.    Information to be seized by the government

All information described in Section I that constitutes fruits, contraband, evidence, and/or instrumentalities of violations of 21 U.S.C. § 846 occurring on or between January 1, 2020, and August 23, 2023, including, for the account or identifier listed on Attachment A, information pertaining to the following matters:

A.  Evidence related to a conspiracy to sell, purchase, and/or distribute fentanyl;

B.  The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s); and

C.  Records relating to the identity of person(s) who communicated with the user ID about matters relating to a conspiracy to sell, purchase, and/or distribute fentanyl, including records that help reveal their whereabouts.

*Affidavit in Support of Search of: Information associated with the Instagram account username "Quill_4k" that is stored at premises controlled by Meta Platforms, Inc., a company headquartered at 1601 Willow Road, Menlo Park, California 94025.*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Ryan C. Temm, being duly sworn, depose and state the following:

## INTRODUCTION

1.     I make this affidavit in support of an application for a search warrant for information associated with a certain Instagram account, "Quill_4k", utilized by Roberto Contreras (hereinafter referred to as the "SUBJECT ACCOUNT") that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered at 1601 Willow Road, Menlo Park, California 94025.  The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Meta Platforms, Inc. to disclose to the government records and other information in its possession pertaining to the subscriber or customer associated with the SUBJECT ACCOUNT, including the contents of communications.

2.     I am an investigative law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 United States Code and am empowered by law to conduct investigations and to make arrests for the offenses enumerated in Section 2516 of Title 18 United States Code.

3.     I am a Senior Special Agent (SSA) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been so employed for approximately fifteen (15) years.  I received my training with the Federal Law Enforcement Training Center (FLETC), and the ATF at the National Academy in Brunswick, Georgia.  At the ATF National Academy, we trained in various

investigative techniques to include preparing a proper search warrant. Since becoming a Special Agent with ATF, I have participated in numerous search and arrest warrants. I have a Bachelor of Arts Degree in Criminal Justice from The George Washington University and a Master of Public Administration from the University of North Carolina at Charlotte. I also successfully completed a basic law enforcement academy with the Charlotte-Mecklenburg Police Department and served nearly eight years as a police officer.

4.    Based on my training and experience, my own investigation of this matter, and information I have learned from other law enforcement officers and databases, I submit there is probable cause to believe that a violation of 21 U.S.C. § 846 (Conspiracy to Distribute Fentanyl) has been committed by the subscriber utilizing the SUBJECT ACCOUNT. There is also probable cause to search the information described in Attachment A for evidence and instrumentalities of this crime further described in Attachment B.

5.    As this Affidavit is being submitted for a limited purpose, I have not included all facts known by law enforcement. I only set forth facts necessary to support the issuance of the requested search warrant.

6.    These conclusions and opinions set forth are based on my experience and training, my direct participation in this investigation as described below, and conversations with other law enforcement officers who are familiar with the facts and circumstances of this investigation. Throughout this Affidavit, all sentences that begin with the words "I believe" are based upon this combination.

## JURISDICTION

7.    This court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), &

(c)(1)(A). Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated. 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

8.      On July 28, 2023, Marco Antonio Orozco ("Orozco") was convicted in this District of conspiracy to distribute and possess with the intent to distribute 400 grams or more of a mixture or substance containing fentanyl, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A).  At the guilty plea hearing, Orozco agreed that in or about and between 2020 and 2022, he sold 5,000 to 10,000 pressed fentanyl pills to co-conspirator Alexander Ortiz ("Ortiz") at least once a month, for further distribution throughout the United States.[1]  In addition to supplying Ortiz with pressed fentanyl pills, Orozco packaged and shipped the pressed fentanyl pills directly to Ortiz's customers, including at least two individuals in Wise County, Virginia.

9.      On July 28, 2023, following Orozco's guilty plea hearing, United States Postal Inspector (USPI) Rob Wagner, Assistant United States Attorney (AUSA) Lena Busscher, and I interviewed Orozco.  Orozco said his sole pressed fentanyl pill source from 2020 to 2022 was "Quill," who he knew at the time as "Robbie" or "Robert."  During a later interview on August 8, 2023, Orozco identified a photograph of Roberto Contreras ("Contreras") as his fentanyl source— "Quill."  Orozco said he bought anywhere from 1,000 to 30,000 pressed fentanyl pills at a time from Contreras during the charged conspiracy, and that he shipped at least some of those pills to Ortiz' customers in Virginia.  Orozco said he paid Contreras 0.60-0.70 cents per pill in cash.

10.      On November 2, 2023, USPI Rob Wagner, AUSA Busscher, and I interviewed Roberto Contreras.  Contreras' attorney, Brian Ely, was also present.  Contreras confirmed that his

---

[1] Alexander Ortiz also was convicted in this District of conspiracy to distribute and possess with the intent to distribute 400 grams or more of a mixture or substance containing fentanyl, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A).

nickname is "Quill."  Contreras said he sold pressed fentanyl pills and other drugs from 2020 to 2023.  He said he sold pressed fentanyl pills to Orozco from mid-2021 to mid-2022.  Contreras said the most pills he sold Orozco at one time was around 20,000.  On average, he said he sold Orozco 10,000 pills once or twice a month.  Orozco paid in cash, 0.60-0.70 cents a pill.  The pills were packaged in Zip-lock bags, sometimes inside designer bags.  Contreras said he knew Orozco was reselling the pressed fentanyl pills and shipping them all over the country.

11.     During the interview, Contreras said his source for pressed fentanyl pills from 2020 to 2023 was "K" or "Guerro".  Contreras thinks "K"'s name is Kevin Aguilar or Kevin Aguirre. He described "K" as a light-skinned Mexican, 5'11", with short brown or "ginger" hair.  He further identified "K" as being 19 years old and having a birthday during the first week of March (March 1-6).  Contreras said he met "K" through Angel Naranjo.  Contreras said "K" added him to his social media accounts, including Instagram, but does not remember how "K" came to supply him with drugs.

12.     Contreras said he often met "K" at a retail plaza, 1222 #104 Magnolia Avenue, Corona, near Centennial High School, to purchase pressed fentanyl pills.  The plaza is in Corona off the freeway near I-15S and I-91E.  "K" used to drive a white Chevy truck to the meet ups and was last known to be driving a black Dodge Charger Hellcat.  Contreras said he and "K" mostly communicated via Telegram and sometimes via cellphone and social media.

13.     Contreras stated his Instagram handle is "Quill_4k" and that some of his customers messaged him on Instagram to purchase drugs.  "K" also contacted him on his Instagram account to see if Contreras needed to purchase drugs.  Contreras said K's Instagram handle is "nottheonek.03".

14.     Contreras said he bought 40,000 pressed fentanyl pills from "K" once or twice a month from mid-2021 through January 2023, and 50,000 pressed fentanyl pills (at 0.50¢/each) from "K" once or twice ever.  The price for the pills started at $2 per pill and decreased as he started to buy more pills.  Contreras said he only paid "K" in cash.  He said the pressed fentanyl pills came from "K" packaged in baggies and sometimes covered in black grease, but never in fire extinguishers (Orozco had indicated in a previous interview that he thought Contreras received the pressed fentanyl pills inside of fire extinguishers).  Contreras confirmed that the approximately 1,500 pressed fentanyl pills found during a March 6, 2023, search warrant executed at his Buena Park, California residence and the 100+ pressed fentanyl pills found during an August 4, 2023, search warrant executed at his Cypress, California storage unit all came from "K."  Contreras said the approximately 907 pressed fentanyl pills found in his possession during a traffic stop on August 3, 2023, in Anaheim, California, also might have come from "K"; he had not driven that particular car in a while and forgot the pills were in it.

15.     Contreras said he also bought 0.5 to 1 kilogram of cocaine from "K" every five months or so.  A kilogram of cocaine cost $14,000 to $15,000.  The approximately 242 grams of cocaine found at his Buena Park residence in March 2023 and the approximately 1 kilogram of cocaine found at his Cypress storage unit in August 2023 also came from "K."

16.     Contreras said in addition to Orozco, he also supplied pressed fentanyl pills to Angel Naranjo (one thousand pills at a time) and a couple guys from out of state who got three to four thousand pills at a time.

## BACKGROUND CONCERNING INSTAGRAM[2]

17.     Instagram is a service owned by Meta Platforms Inc., a United States company and a provider of an electronic communications service as defined by 18 U.S.C. §§ 3127(1) and 2510. Specifically, Instagram is a free-access social networking service, accessible through its website and its mobile application, that allows subscribers to acquire and use Instagram accounts, like the SUBJECT ACCOUNT listed in Attachment A, through which users can share messages, multimedia, and other information with other Instagram users and the general public.

18.     Meta Platforms Inc. collects basic contact and personal identifying information from users during the Instagram registration process. This information, which can later be changed by the user, may include the user's full name, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, credit card or bank account number, and other personal identifiers. Meta Platforms Inc. keeps records of changes made to this information.

19.     Meta Platforms Inc. also collects and retains information about how each user accesses and uses Instagram. This includes information about the Internet Protocol ("IP") addresses used to create and use an account, unique identifiers and other information about devices and web browsers used to access an account, and session times and durations.

20.     Each Instagram account is identified by a unique username chosen by the user. Users can change their usernames whenever they choose but no two users can have the same usernames at the same time. Instagram users can create multiple accounts and, if "added" to the

---

[2] The information in this section is based on information published by Meta Platforms Inc. on its website and its Instagram website, including, but not limited to, the following webpages: "Data Policy," https://help.instagram.com/519522125107875; "Information for Law Enforcement," https://help.instagram.com/494561080557017; and "Help Center," https://help.instagram.com.

primary account, can switch between the associated accounts on a device without having to repeatedly log-in and log-out.

21.    Instagram users can also connect their Instagram and Facebook accounts to utilize certain cross-platform features, and multiple Instagram accounts can be connected to a single Facebook account. Instagram accounts can also be connected to certain third-party websites and mobile apps for similar functionality. For example, an Instagram user can "tweet" an image uploaded to Instagram to a connected Twitter account or post it to a connected Facebook account, or transfer an image from Instagram to a connected image printing service. Meta Platforms Inc. maintains records of changed Instagram usernames, associated Instagram accounts, and previous and current connections with accounts on Meta Platforms Inc. and third-party websites and mobile apps.

22.    Instagram users can "follow" other users to receive updates about their posts and to gain access that might otherwise be restricted by privacy settings (for example, users can choose whether their posts are visible to anyone or only to their followers). Users can also "block" other users from viewing their posts and searching for their account, "mute" users to avoid seeing their posts, and "restrict" users to hide certain activity and prescreen their comments. Instagram also allows users to create a "close friends list" for targeting certain communications and activities to a subset of followers.

23.    Users have several ways to search for friends and associates to follow on Instagram, such as by allowing Meta Platforms Inc. to access the contact lists on their devices to identify which contacts are Instagram users. Meta Platforms Inc. retains this contact data unless deleted by the user and periodically syncs with the user's devices to capture changes and additions. Users can similarly allow Meta Platforms Inc. to search an associated Meta Platforms Inc. account, such

as Facebook, for friends who are also Instagram users. Users can also manually search for friends or associates.

24.     Each Instagram user has a profile page where certain content they create and share ("posts") can be viewed either by the general public or only the user's followers, depending on privacy settings. Users can customize their profile by adding their name, a photo, a short biography ("Bio"), and a website address.

25.     One of Instagram's primary features is the ability to create, edit, share, and interact with photos and short videos. Users can upload photos or videos taken with or stored on their devices, to which they can apply filters and other visual effects, add a caption, enter the usernames of other users ("tag"), or add a location. These appear as posts on the user's profile. Users can remove posts from their profiles by deleting or archiving them. Archived posts can be reposted because, unlike deleted posts, they remain on Meta Platforms Inc.'s servers.

26.     Users can interact with posts by liking them, adding or replying to comments, or sharing them within or outside of Instagram. Users receive notification when they are tagged in a post by its creator or mentioned in a comment (users can "mention" others by adding their username to a comment followed by "@"). An Instagram post created by one user may appear on the profiles or feeds of other users depending on a number of factors, including privacy settings and which users were tagged or mentioned.

27.     An Instagram "story" is similar to a post but can be viewed by other users for only 24 hours. Stories are automatically saved to the creator's "Stories Archive" and remain on Meta Platforms Inc.'s servers unless manually deleted. The usernames of those who viewed a story are visible to the story's creator until 48 hours after the story was posted.

28.     Instagram allows users to broadcast live video from their profiles.  Viewers can like and add comments to the video while it is live, but the video and any user interactions are removed from Instagram upon completion unless the creator chooses to send the video to IGTV, Instagram's long-form video app.

29.     Instagram Direct, Instagram's messaging service, allows users to send private messages to select individuals or groups.  These messages may include text, photos, videos, posts, videos, profiles, and other information.  Participants to a group conversation can name the group and send invitations to others to join.  Instagram users can send individual or group messages with "disappearing" photos or videos that can only be viewed by recipients once or twice, depending on settings.  Senders can't view their disappearing messages after they are sent but do have access to each message's status, which indicates whether it was delivered, opened, or replayed, and if the recipient took a screenshot.  Instagram Direct also enables users to video chat with each other directly or in groups.

30.     Instagram offers services such as Instagram Checkout and Facebook Pay for users to make purchases, donate money, and conduct other financial transactions within the Instagram platform as well as on Facebook and other associated websites and apps.  Instagram collects and retains payment information, billing records, and transactional and other information when these services are utilized.

31.     Instagram has a search function which allows users to search for accounts by username, user activity by location, and user activity by hashtag.  Hashtags, which are topical words or phrases preceded by a hash sign (#), can be added to posts to make them more easily searchable and can be "followed" to generate related updates from Instagram. Meta Platforms Inc. retains records of a user's search history and followed hashtags.

32.     Meta Platforms Inc. collects and retains location information relating to the use of an Instagram account, including user-entered location tags and location information used by Meta Platforms Inc. to personalize and target advertisements.

33.     Meta Platforms Inc. uses information it gathers from its platforms and other sources about the demographics, interests, actions, and connections of its users to select and personalize ads, offers, and other sponsored content.  Meta Platforms Inc. maintains related records for Instagram users, including information about their perceived ad topic preferences, interactions with ads, and advertising identifiers.  This data can provide insights into a user's identity and activities, and it can also reveal potential sources of additional evidence.

34.     In some cases, Instagram users may communicate directly with Meta Platforms Inc. about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users.  Social networking providers like Meta Platforms Inc. typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

35.     For each Instagram user, Meta Platforms Inc. collects and retains the content and other records described above, sometimes even after it is changed by the user (including usernames, phone numbers, email addresses, full names, privacy settings, email addresses, and profile bios and links).

36.     In my training and experience, evidence of who was using Instagram and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above.  This evidence may establish the "who, what, why, when, where,

and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

37.      For example, the stored communications and files connected to an Instagram account may provide direct evidence of the offense under investigation.  Based on my training and experience, instant messages, emails, voicemails, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offense under investigation.

38.      In addition, the user's account activity, logs, stored electronic communications, and other data retained by Meta Platforms Inc. can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.   For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date, and time) may be evidence of who used or controlled the account at a relevant time.  As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account.  Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

39.      Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offense under investigation.  For example, information on the account may indicate the owner's motive and intent to commit a crime with another person (e.g., information indicating a plan to commit a conspiracy crime).

40.     Therefore, Meta Platforms Inc.'s servers are likely to contain stored electronic communications and information concerning subscribers and their use of Instagram.  In my training and experience, such information may constitute evidence of the crime under investigation.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

41.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Meta Platforms Inc. to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

42.     Based on the foregoing information, I believe that probable cause exists that violations of 21 U.S.C. § 846 (Conspiracy to Distribute Fentanyl) have occurred by Roberto Contreras and others utilizing the SUBJECT ACCOUNT.  I request that the Court issue the proposed search warrant.

43.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

44.     The government will execute this warrant by serving the warrant on Meta Platforms Inc.  Because the warrant will be served on Meta Platforms Inc., who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

I declare under penalty of perjury that the statements above are true and correct to the best of my knowledge and belief.

Respectfully submitted,

Ryan C. Temm
Senior Special Agent
Bureau of Alcohol, Tobacco, Firearms and
Explosives

Subscribed and sworn to before me this _____ day of November, 2023.

Honorable Pamela Meade Sargent
United States Magistrate Judge
Western District of Virginia

Reviewed by:  Lena Busscher, AUSA